IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN RODRIGUEZ,

    Plaintiff,

  v.

U.S. BANK NATIONAL ASSOCIATION, successor in interest to the FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.; LAND AMERICA DEFAULT SERVICES; FCI LENDERS SERVICE; TOM ANTHONY, broker, ANTHONY ASSOCIATES; DOES 1–100, inclusive,

    Defendants.

                                      /

No. C 12-00989 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND VACATING HEARING**

## INTRODUCTION

In this mortgage-loan dispute, defendants move to dismiss pursuant to FRCP 12(b)(6). For the reasons stated below, the motion is **GRANTED**. The motion hearing scheduled for June 14 is **VACATED**.

## STATEMENT

*Pro se* plaintiff Juan Rodriguez is an individual residing in Alameda County. Defendants are U.S. Bank National Association, successor in interest to the Federal Deposit Insurance Corporation as receiver for Downey Savings and Loan Association, F.A., Land

1  America Default Services, FCI Lenders Service, Tom Anthony, broker, Anthony Associates, and
2  Does 1 through 100.

3        In February 2006, plaintiff entered into a refinanced mortgage loan agreement with
4  Downey Savings (RJN Exh. A). The $448,000.00 loan was secured by a deed of trust on
5  real property located in Oakland, California (First Amd. Compl. ¶ 32, RJN Exh. A at 2–3).
6  In November 2008, the Office of Thrift Supervision closed Downey Savings, and its assets and
7  banking operations (including plaintiff's loan) were sold to U.S. Bank in a transaction facilitated
8  by the OTS and FDIC. The FDIC website on the transition instructed loan customers:
9  "Checks should be made payable as usual and sent to the same address until further notice."

10        Plaintiff had difficulty making his mortgage payments, and a notice of default and
11  election to sell was recorded by the Alameda County recorder's office on October 20, 2008
12  (RJN Exh. B). A notice of trustee's sale was recorded by the Alameda County recorder's office
13  in January 2009 (RJN Exh. C), and in February 2009, the property was sold at a public auction
14  for $89,500 (RJN Exh. D at 2). U.S. Bank was the successful purchaser; defendant Tom
15  Anthony was listed as a grantee on the trustee's deed upon sale, which was recorded in
16  March 2009 (Br. 4, RJN Exh. D at 1).[1]

17        Plaintiff originally filed this action against defendants Downey Savings, Land America
18  Default Services, FCI Lenders Service, Tom Anthony, broker, Anthony Associates, and Does
19  1–100, in Alameda County Superior Court on March 9, 2009 (Case No. RG09440145).
20  His complaint was mislabeled as "Interpleader of Juan Rodriguez . . . ." Plaintiff filed a first
21  amended complaint on July 26, 2010. In January 2012, U.S. Bank was served with a copy of the

---

[1] Defendants request that judicial notice be taken of the following documents pertaining to the foreclosure history: (1) deed of trust recorded with the Alameda County recorder's office on February 16, 2006; (2) notice of default and election to sell under deed of trust recorded with the Alameda County recorder's office on October 20, 2008; (3) notice of trustee's sale recorded with the Alameda County recorder's office on January 27, 2009; (4) trustee's deed upon sale recorded with the Alameda County recorder's office on March 4, 2009 (RJN at 2); as well as the FDIC website, www.fdic.gov/bank/individual/failed/downey.html, which documents the transition from Downey Savings to U.S. Bank. Defendants' request is **GRANTED**, as the contents of these documents are "not subject to reasonable dispute" in that, as public records and a government website, they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201.

2

amended complaint and a state court summons. U.S. Bank then removed the action pursuant to 28 U.S.C. 1441 and 1446, and now moves to dismiss all claims.

The first amended complaint alleges two claims for violation of the California Business and Professions Code: (1) Section 17200, and (2) Section 17500, as well as several undeveloped claims of fraud, breach of fiduciary duty, wrongful foreclosure, and forgery. Plaintiff also alleges violations of two federal laws: the Truth in Lending Act, 12 C.F.R. 226, and the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. 2607.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted). *Pro se* complaints are held to less stringent standards than complaints drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess. v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2001) (citation omitted). Of particular relevance here, FRCP 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (citations omitted). A complaint must set forth what is false or misleading about a statement and why it is false — not merely neutral facts identifying the transaction. *Vess*, 317 F.3d at 1106.

3

1.  **STATUTE OF LIMITATIONS.**

    A.  **Time-Barred Claims**.

Plaintiff's claims under Section 17500 are time-barred. California Code of Civil Procedure Section 338(a) sets a default three-year statute of limitation for actions created by statute. Because plaintiff's loan was commenced on February 7, 2006 (recorded February 16, 2006), the deadline to file would have been on February 7, 2009. Even if plaintiff's March 2009 filing of an "Interpleader" is considered a complaint — which defendants dispute — it was too late.[2]

The statute of limitations for Section 17200 claims is governed by Section 17208, which imposes a four-year limitation. Nevertheless, Section 17200 may not be used as a device to avoid the statute of limitations of the underlying laws allegedly violated. *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1007 n.3 (9th Cir. 2008). Plaintiff's Section 17200 claims are largely based on his TILA claims. TILA has a statute of limitations of one year for damages claims under 16 U.S.C. 1640(e), and three years for rescission claims under 15 U.S.C. 1635(f), both of which plaintiff failed to meet. Plaintiff may not use Section 17200 as an "end-run" around the statute of limitations for claims based on TILA. Because TILA Section 1635(f) sets out an "absolute" three-year limitation on rescission, plaintiff's claims under TILA Section 1635 are **DISMISSED WITHOUT LEAVE TO AMEND**. However, equitable tolling may apply to extend the one-year limitation on plaintiff's claims that rely on Section 1640:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.

---

[2] Defendants argue that because the filing "contains no causes of action" it does not matter for statute of limitations considerations. Reading the document with the liberality required of *pro se* complaints, it arguably alleges wrongful foreclosure, although inadequately pled, and seeks reinstatement of the loan. Despite being mislabeled "interpleader," the document was sufficiently detailed to put defendants on notice of a lawsuit arising from the foreclosure.

4

*King v. California*, 784 F.2d 910, 913, 915 (9th Cir. 1986). As will be discussed in greater detail later, plaintiff will have to re-plead fraudulent concealment with greater specificity to toll this claim.

The TILA violation is not the only possible basis of plaintiff's Section 17200 claim. To the extent that Section 17500 is the underlying law, it is also time-barred for the reasons discussed at the beginning of this section. RESPA has a statute of limitations of one year, and is also time-barred. Insofar as plaintiff attempts to allege common law fraud or breach of fiduciary duty (based on fraudulent sales practices) as basis for the Section 17200 claim or as independent claims (deficiencies in the pleadings are addressed below), these claims are time-barred as well, because California Code of Civil Procedure Section 338(d) imposes a three-year limitation on fraud-based claims. With the exception of two undeveloped claims discussed in the next section, all of plaintiff's claims are time-barred on the face of the complaint.

### B.     Claims Not Time-Barred but Insufficiently Pled.

Plaintiff's Section 17200 claim may be subject to the four-year statute of limitations only insofar as it is grounded in unfair business practices, as opposed to fraudulent or unlawful practices that are subject to the limitations just described. The complaint is insufficiently definite to state claims of unfair practices or wrongful foreclosure, so it is not possible to determine whether these claims are time-barred at this time. Importantly, it is even unclear when the fraudulent act occurred.

### C.     Tolling: New Allegations of Fraudulent Concealment.

The discovery rule of tolling may serve to postpone accrual of a claim until the plaintiff discovers or has reason to discover the injury. To benefit from the discovery rule, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 634, 638 (2007) (citations omitted). The discovery rule does not apply to plaintiff's unfair competition claims: "the statute begins to run when cause of action accrues, irrespective of whether plaintiff knew of its accrual, *unless plaintiff can successfully invoke the*

5

*equitable tolling doctrine.*" *Stutz Motor Car of America, Inc. v. Reebok Intern., Ltd.*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995), *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997) (emphasis added); *see also Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001) (distinguishing equitable tolling from the discovery rule, in that equitable tolling depends on whether plaintiff's delay was excusable).

Plaintiff brings new allegations of fraudulent concealment in his opposition brief and argues that these allegations will defeat a motion to dismiss (Opp. 2). The brief argues that the statute of limitations should be tolled due to defendants' fraud in not showing all of his payments:

> I am not sure about what they mean by the "Statute of Limitations", but from what has been explained to me I did not waste any time complaining to the representatives of Downey Saving & Loan about their mistake in not posting my payments. Now I realize that is was not just a mistake, but "fraudulent concealment" of my payments and the unlawful taking of my family home. I have all of the receipts and Bank statements clearly showing my timely payments.

(Opp. 2). He reiterates these points in his case management statement and says he kept making his payments to Downey Savings but started receiving letters from U.S. Bank about payments. He also alleges that, after the sale of the property, Downey Savings returned over $8,000 in payments he had made.

It must be stressed that plaintiff may not add allegations to his complaint through his briefings. While plaintiff's new allegations may support application of the discovery rule and/or equitable tolling, he must plead them in a complaint. Even when read with liberality, the contents of the current operative complaint does not sufficiently allege tolling. The complaint does not indicate what was concealed, when and how it was discovered, or why he was unable to make that discovery earlier. It contains only vague statements of fraudulent practices and errors in accounting and payments, but does not show how these allegations relate to concealment or excusable delays.

### 2. **FAILURE TO STATE A CLAIM**.

Independent of the statute of limitations issues, plaintiff fails to plead each claim with sufficient specificity. The rest of this order will serve as a guide for deficiencies plaintiff needs to address in his next complaint, if he chooses to seek leave to file one.

Plaintiff alleges TILA violations based on assertions that defendants intentionally relaxed their underwriting standards in order to sell risky loans to the plaintiff, without examining his current and expected repayment ability. Additional alleged violations of TILA include failure to clearly and conspicuously disclose "key provisions" of plaintiff's mortgage, including "the eventually reset interest rate, specific loan terms along with home, such as Plaintiff's association dues, and the total dollar amount the mortgage will cost over time" (First Amd. Compl. ¶¶ 12–13, 40).

Plaintiff also alleges violation of RESPA's prohibition against kickbacks and unearned fees. Plaintiff alleges that defendants provided "undisclosed financial incentives, fees payments and other 'things of value' to its agents, account executives, loan officers, and brokers marketing and selling its product" (*id.* ¶ 14).

Further allegations state that defendants used reduced or no documentation loan programs that eliminated oversight with traditional requirements of documenting borrowers' income with "W-2's, tax returns or other documents such as bank statements, asset statement, pay stubs" (plaintiff does not state whether he provided any such documentation for his loan application) and ignored factors to protect plaintiff such as "loan-to-value ratios" and "debt-to-income ratios" (*id.* ¶¶ 28–29). Brokers and agents allegedly hired appraisers who fraudulently inflated the appraised value of plaintiff's home in order to increase the loan amount (*id.* ¶¶ 16, 19, 25). Defendants also created thirty-year adjustable rate mortgages with initial two-year fixed-rate periods, knowing plaintiffs would not be able to pay the monthly amounts after the fixed period, resulting in foreclosure (*id.* ¶ 18, 23). Plaintiff alleges that defendants made false and misleading statements about the interest rate increase and said "not to worry" because a new loan would be arranged (*id.* ¶¶ 23–24).

7

To sum up, defendants allegedly knew or should have known that the relaxed underwriting standards, serial-refinancing model, and assumptions about home value appreciation would lead to a "high likelihood, or at the very least, a foreseeable result" of plaintiff's foreclosure, and defendants knew or should have known that their statements when selling the loan to plaintiff were untrue or misleading (*id.* ¶¶ 21, 41).

### A. California Business and Professions Code Section 17500 (Untrue or Misleading Statements).

Plaintiff's first claim for relief alleges violation of California's False Advertising Law, under which "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services," to disseminate any statement concerning the property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." BUS. & PROF. CODE § 17500. Plaintiff's claims are governed by the "reasonable consumer" test, which requires plaintiff to show that "members of the public are likely to be deceived." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

Although whether a business practice is deceptive is typically a question of fact not to be resolved on a motion to dismiss, plaintiff fails to allege sufficient facts to indicate what the statements were, and specifically how those statements were false or misleading. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Furthermore, plaintiff fails to identify which defendant(s) made the statements. Without additional facts regarding the statements and who made them, the complaint does not show how the plaintiff or a reasonable consumer was likely to be deceived by defendants, or why the defendants knew or should have known the statements were untrue or misleading.

### B. California Business and Professions Code 17200 (Unfair Competition).

To state a claim for unfair competition pursuant to Section 17200, a plaintiff must allege that a defendant engaged in an "unlawful, unfair or fraudulent business act or practice" or in "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. The complaint fails to state a claim under all three prongs of the statute.

8

### *(1)  Unlawful Business Act or Practice.*

The "unlawful" prong of the statute incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F. 3d 1042, 1048 (9th Cir. 2000). The operative pleading must allege the way in which the practices violated the "borrowed" law by "stat[ing] with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 618–19 (1993).

Plaintiff presents three possible laws which could form the basis of an "unlawful" element of the Section 17200 claim: TILA, RESPA, and Section 17500. Most of plaintiff's arguments for violations of these three statutes are grounded in fraud, which must be plead with particularity. This order must strip averments of fraud insufficiently pled and examine the remaining allegations for a cognizable claim. *Vess. v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2001).

*First*, plaintiff's TILA argument relies on failure to disclose material provisions of the loan and failure to determine plaintiff's repayment ability. But the interest rates, amount, and specific loan terms are set out in the deed of trust (RJN Exh. A), so plaintiff's conclusory statement that these items were not clearly and conspicuously disclosed is insufficient. Plaintiff's allegations regarding repayment ability are also insufficient. 15 U.S.C. 1639(c), the section of TILA that requires lenders to assess borrowers' repayment ability, was enacted in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and does not apply to plaintiff's 2006 loan.

*Second*, plaintiff's RESPA claim is insufficient because it fails to state facts specific to the transaction leading to unlawful kickbacks. The complaint does not include facts about the "real estate services" performed, the "charges" accepted, or the services "actually performed." *See* 12 U.S.C. 2607(a)-(b). Plaintiff alleges that defendants' "compensation structure" violates RESPA, but a "high-pressure sales environment" does not show that kickbacks or unearned fees were paid. Plaintiff fails to allege what constituted the kickbacks or fees, who received them,

1  and why they were beyond the reasonable value of services.  The allegations are especially
2  deficient given that the claim is directed at all of the defendants as a group.
3       *Third*, although any violation under Section 17500 necessarily violates Section 17200,
4  as discussed, plaintiff does not adequately plead violation of 17500.

### (2) *Unfair Business Act or Practice.*

6       "The term 'unfair . . . business act or practice' . . . mean[s] deceptive conduct that injures
7  consumers and competitors."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal
8  4th 163, 187, 195–96 (1999) (criticizing "amorphous" definitions of fairness); *see Scripps Clinic*
9  *v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) ("[T]he public policy which is a predicate
10  to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions.").
11       Because plaintiff has failed to state claims under the "unlawful" analysis, and has failed
12  to show a connection to constitutional or regulatory provisions, he has not stated a claim under
13  the "unfair practices" prong of Section 17200.  The law requires more than plaintiff's subjective
14  opinion that defendants' practices were unfair.

### (3) *Fraudulent Business Act or Practice.*

16       The averments of a non-fraud claim which sound in fraud are subject to FRCP 9(b).
17  *Vess. v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2001).  Allegations of fraudulent
18  conduct under Section 17200 must satisfy this heightened pleading requirement.  *Ibid.*
19       Many of plaintiff's allegations about defendants' business practices are rooted in
20  fraud and are pled with insufficient particularity.  The complaint contains no specific facts about
21  plaintiff's mortgage transaction.  He again fails to state "the who, what, when, where, and how,"
22  and sets forth broad assertions directed at all of the defendants.  *See id.* at 1106.  He alleges that
23  agents and brokers fraudulently inflated the appraised value of his home, but provides no
24  specifics about the transaction or individuals involved.  Plaintiff also does not allege any facts
25  that show defendants either knew or should have known any particular representation was false
26  when made or that they had any doubt in its truth; he merely alleges these conclusions.

### C. Plaintiff's Remaining Undeveloped Claims.

Undeveloped claims of fraud, breach of fiduciary duty, forgery, and wrongful foreclosure are interspersed through the complaint. The complaint is described as a "First Amended Complaint for Fraud" and refers to various practices as "fraudulent" but it does not adequately state a claim for common law fraud (First Amd. Compl. at p. 1; ¶¶ 16, 20, 26). Plaintiff also alleges breach of fiduciary duty (*id.* ¶ 31), but the prevailing law is well-settled that lenders are ordinarily not fiduciaries of borrower-customers. *Nymark v. Heart Federal Savings and Loan Ass'n*, 231 Cal. App. 3d 1098, 1093, 1096 (1991). Plaintiff "questions the sale and acquisition of the property" and alleges an "incorrect accounting" of the amount he owed defendants (*id.* ¶ 34, 37), but these vague statements are insufficient to state a claim for wrongful foreclosure. Plaintiff also mentions "forgery of documents" (*id.* ¶¶ 10, 37), but he does not allege any facts to state a claim for relief.

Plaintiff elaborates on several of these points in his opposition brief and also suggests claims of breach of contract and implied covenant of good faith and fair dealing; however, he may not use his brief to add to the operative complaint.

Therefore, plaintiff's claims for common law fraud, forgery, breach of fiduciary duty, and wrongful foreclosure are **DISMISSED**. If plaintiff wishes to plead the aforementioned claims, he must seek leave to amend, and plead the claims with sufficient factual allegations to state a plausible claim to relief.

### 3. HOLA PREEMPTION.

Defendant argues that plaintiff's claims for relief are preempted by the Home Owners Loan Act, 12 U.S.C. 1464, which preempts state law in areas including terms of credit; disclosure and advertising; and processing, origination, servicing, sale or purchase of, or investment or participation in mortgages. 12 C.F.R. 560.2(b). The test for state law preemption is:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next

11

> question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50,951-01, 50,966-67 (Sept. 30, 1996). Paragraph c excludes preemption of state contract, commercial, real property, tort, criminal, and other laws "to the extent that they only incidentally affect . . . lending operations." 12 C.F.R. 560.2(c).

HOLA preemption of Section 17200 is not absolute as defendants imply; this judge has distinguished claims involving verbal misrepresentations and material fraud. Because laws against fraud and unfair business practices apply broadly to all businesses and their practices, such laws only incidentally affect lending practices. *See Lopez v. Wachovia Mortg.*, Case No. C 10-01645, 2010 WL 2836823 (N.D. Cal. July 19, 2010) (Alsup, J.); *Johannson v. Wachovia Mortg. FSB*, Case No. C. 11-02822, 2011 WL 3443952 (N.D. Cal. Aug. 5, 2011) (Alsup, J.).

The preemption analysis depends on the extent to which the claims rely on generally applicable state laws under paragraph c, and the extent to which they rely on types of laws explicitly preempted under paragraph b. Due to the deficiencies in facts pled, as discussed above, the nature of the claims is not sufficiently definite to complete the analysis. Moreover, it is even unclear whether HOLA preemption applies to U.S. Bank. Although the loan originated with Downey Savings, a federally-chartered savings association (RJN Exh. A), U.S. Bank is a federally chartered national bank governed by the National Bank Act. This Court has taken the position that whether HOLA governs the action depends on when the alleged conduct occurred. *Ramirez v. Wells Fargo Bank, N.A.*, No. C 10-05874 WHA, 2011 WL 1585075 (N.D. Cal., Apr. 27, 2011) (declining to find HOLA preemption of claims arising out of post-merger conduct); *see also Valtierra v. Wells Fargo Bank, N.A.*, CIV-F-10-0849, 2011 WL 590596 (E.D. Cal. Feb. 10, 2011). Because the motion is granted on the foregoing reasoning, we need not and do not reach the question of preemption at this time.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **GRANTED**. The motion hearing scheduled for June 14 is **VACATED**. Plaintiff may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint in order to further develop his claims. A proposed amended complaint must be appended to the motion and plaintiff must plead his best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein. Plaintiff, who is proceeding *pro se*, is advised that information is available online at http://ccand.uscourts.gov/proselitigants and also in person at the legal help center. An appointment with the legal help center may be made by calling 415-782-9000, extension 8657.

**IT IS SO ORDERED.**

Dated: June 4, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE